**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| V. | : | **CRIMINAL NUMBER 25-14** |
| | : | |
| | : | |
| VERNON BAKER | : | |

**DEFENDANT'S SENTENCING MEMORANDUM AND**
**MOTION FOR DOWNWARD VARIANCE**

Vernon Baker, by and through his undersigned counsel, hereby submits this sentencing memorandum and motion for downward variance in anticipation of his March 23, 2026 sentencing hearing. Although the parties agree that Mr. Baker's sentencing guidelines range is correctly reflected in the Presentence Report (PSR) as 21-27 months of incarceration, Mr. Baker submits that his Criminal History Category overstates the true nature and seriousness of his scoreable criminal history, which amounts to three misdemeanor convictions for driving under the influence (DUI) from 2013, 2015, and 2018 and a misdemeanor conviction for giving a false name to a police officer and drug possession in 2019.

Moreover, Mr. Baker's instant offense conduct, information provided and direct observations made by his family members in recent years, the facts surrounding his prior DUI and drug possession convictions, and the court-ordered psychological evaluation paint an irrefutable picture of a man who has been struggling with untreated mental illness and drug addiction for approximately a decade. This unfortunate reality, coupled with the fact that Mr. Baker will now be subject to the rather punitive reporting requirements of the Sex Offender Registration and Notification Act (SORNA), warrants a sentence below the advisory range.

Specifically, Mr. Baker respectfully requests that the Court grant a modest downward variance and impose a sentence of time served for the year he has spent in federal detention and permit him to engage in dual diagnosis treatment while subject to the strict conditions of federal supervised release.  Such a sentence will meaningfully account for his acceptance of responsibility—preventing the victim from having to testify at a trial—and untreated mental health and addiction issues while satisfying the goals and mandate of 18 U.S.C. § 3553(a) and *United States v. Booker*, 543 U.S. 220 (2005).

## I.    BACKGROUND AND PROCEDURAL HISTORY

On October 30, 2024, Mr. Baker clearly crossed a line when he inappropriately touched the victim without her consent while on a flight from Los Angeles to Philadelphia.  *See* PSR ¶¶ 10-19.  A federal grand jury issued an indictment on January 25, 2025 charging him with one count of abusive sexual contact on an aircraft, in violation of 49 U.S.C. § 46506, and he was taken into federal custody without incident on February 18, 2025.  *Id.* at ¶¶ 1, 19.  At the first listing of Mr. Baker's detention hearing in Magistrate Court, the Honorable Carol Sandra Moore Wells ordered that he undergo a mental health evaluation, which was conducted by Dr. Allison Dovi, PhD, on March 5, 2025.  *See* Dr. Dovi's Report attached hereto as Exhibit A (sealed).  Based on that report, on May 5, 2025, the Honorable Pamela A. Carlos denied the government's motion for detention and ordered that Mr. Baker be released to reside on home detention with location monitoring at a residential reentry center (RRC).  *See* ECF 26.  Unfortunately, before Mr. Baker could begin engaging in outpatient dual diagnosis treatment, he violated the terms of his pretrial release, which resulted in his reincarceration in July 2025.  PSR ¶¶ 5-9.  In total, he has spent just shy of one year in pretrial detention.  *Id.* at ¶ 9.

2

On October 27, 2025, Mr. Baker litigated a motion to suppress his statements during which he, through counsel, brought to the Court's attention Dr. Dovi's findings, including her diagnoses of Unspecified Schizophrenia Spectrum and Other Psychotic Disorder, Unspecified Personality Disorder, Adjustment Disorder with Mixed Anxiety and Depressed Mood, Other Specified Trauma- and Stressor-Related Disorder, and Cannabis Use Disorder, as well as his mother's observations of Mr. Baker's peculiar behavior in the recent years leading up to his arrest in this case. *See* Ex. A. The Court denied the Motion, and Mr. Baker subsequently entered a guilty plea to the one-count Indictment on December 3, 2025. PSR ¶ 2.

The parties agree that the PSR accurately calculates Mr. Baker's total offense level as 10, *id.* at ¶ 32, his Criminal History Category as V, *id.* at ¶ 44, and his sentencing range as 21-27 months of imprisonment, *id.* at ¶ 91. However, given the mitigating nature of his mental health and addiction needs and history, overstatement of his criminal history as determined by the sentencing guidelines, acceptance of responsibility, and that Mr. Baker will be subject to the additional severe punishment of SORNA registration, he respectfully requests a time served sentence followed by one year of supervised release.

## II. A FULL AND FAIR APPLICATION OF 18 U.S.C. § 3553(A) SUPPORTS IMPOSITION OF A TIME SERVED SENTENCE WITH A ONE-YEAR PERIOD OF SUPERVISED RELEASE

For at least several years prior to Mr. Baker's arrest in this case, he had been unhoused, using drugs, and increasingly mentally unwell. His mother, Senester Mays, confirmed this to FBI Agent Chad Strickland in an interview conducted on October 20, 2025 during which Ms. Mays expressed that Mr. Baker "ha[d] not been in the right state of mind [for] the last three to four years [and] had been getting worse." *See* Mot. to Suppress Def. Ex. 9. She told Agent Strickland that she suspected his mental health decline was related to his drug use and offered

3

that he had done "weird things" like "tr[ying] to visit President Trump" and traveling to states to which he had no connection, like Texas and California, after his "mind [started] slipping." *Id.* Ms. Mays confirmed that he had been unhoused for years, though he would periodically visit her to "rest, shower, and gather himself." *Id.* And Mr. Baker's close longtime friend, Anthony Nelums, corroborated Ms. Mays's observations to the PSR Probation Officer noting that Mr. Baker "has been intermittently experiencing mental health episodes over the past several years." PSR ¶ 70.

Indeed, Ms. Mays's and Mr. Nelums's suspicions about Mr. Baker's mental health and addiction issues were confirmed by Dr. Dovi during the court-ordered evaluation. Notably, Mr. Baker expressed paranoia, believing that "a 'group is targeting him,' making him the underdog in many situations" but did not elaborate on these beliefs, and he acknowledged that he often "says things that people do not like [because he is] someone who communicates directly with others[, which] is not always well-received." Ex. A p. 5. Dr. Dovi observed, rightly, that Mr. Baker has minimal insight into how others perceive his behavior, and his symptoms and other information provided led her to diagnose him with Unspecified Schizophrenia Spectrum and Other Psychotic Disorder, Unspecified Personality Disorder, Adjustment Disorder with Mixed Anxiety and Depressed Mood, Other Specified Trauma- and Stressor-Related Disorder, and Cannabis Use Disorder. *Id.* at pp. 8-9.

Given this information, as well as his rather bizarre conduct while interacting with the victim, Mr. Baker was almost certainly experiencing symptoms of mental illness on the date of the instant offense, which is mitigating in and of itself. And his addiction issues are abundantly clear from the nature of his criminal history, which consists of DUIs, drug possession, and related nonviolent offenses. *See* PSR ¶¶ 33-42. He is in need of dual diagnosis treatment to

finally begin to explore the root causes of these issues, as well as his childhood trauma, which the Bureau of Prisons (BOP) simply does not adequately offer. Ex. A at pp. 8-9. Importantly, Mr. Baker is interested in and amenable to therapy, and he has been taking psychotropic medication during his time in custody at the FDC, so he is clearly willing to take the necessary steps to address his mental health and substance abuse issues. *See* PSR ¶¶ 81. On balance, Mr. Baker's background and the context in which he committed the instant offense, though serious, warrant a sentence of time served and a period of supervised release aimed at treatment and rehabilitation.

Importantly, such a sentence would not contravene § 3553(a)'s sentencing goals. First, a year in custody for an individual with a relatively minimal criminal history who is only beginning to confront and accept his mental health needs, which are not adequately met at the FDC, is a serious punishment and reflects the seriousness of the offense. And Mr. Baker faces the additional significant punishment of being subject to SORNA registration requirements for years to come. Second, a sentence of time served with a period of supervised release that includes dual diagnosis treatment will serve the goals deterrence, especially in light of SORNA's penalty scheme should Mr. Baker fail to fulfill his registration requirements. Finally, as detailed above, his correctional and treatment needs will be better served out of custody, as the BOP's staffing shortages and lack of individual therapy nearly guarantee that any additional incarceration time will not serve any meaningful rehabilitative purpose for Mr. Baker.

As for the remaining § 3553(a) provisions, the requested sentence does not contravene any policy statements issued by the Sentencing Commission and, in light of the mitigating information regarding Mr. Baker's mental health, instability, and past trauma, would not result in any *unwarranted* sentencing disparity.

### III.   CONCLUSION

Mr. Baker recognizes his offense is serious and has spent nearly a year reflecting on his conduct and life and has accepted responsibility for his actions.  On balance, a time served sentence with a period of supervised release to follow that includes a condition of dual diagnosis treatment to address his significant mental health and addiction needs is sufficiently punitive under the totality of the circumstances.  For all the reasons cited herein and any others which may become apparent to the Court at the sentencing hearing, the defense respectfully asks the Court to impose the aforementioned sentence.

Respectfully submitted,

*/s/ Kathleen Gaughan*
KATHLEEN GAUGHAN
Assistant Federal Defender

*/s/ Katrina Young*
KATRINA YOUNG
Assistant Federal Defender

## CERTIFICATE OF SERVICE

We, Katrina Young and Kathleen Gaughan, Assistant Federal Defenders, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that we filed and served the attached Defendant's Sentencing Memorandum and Motion for Downward Variance via electronic mail upon Josh Davison, Assistant United States Attorney, Suite 1250, 615 Chestnut Street, Philadelphia, Pennsylvania 19106, and Carolyn M. DeMayo, Senior United States Probation Officer, 600 Arch Street, Philadelphia, Pennsylvania 19106, via email.

*/s/ Katrina Young*
KATRINA YOUNG
Assistant Federal Defender

*/s/ Kathleen Gaughan*
KATHLEEN GAUGHAN
Assistant Federal Defender

DATE:  March 17, 2026